**PENTHOUSE MEDIA GROUP, INC.,**
**Appellant/Third Party Plaintiff,**

v.

**PACHULSKI STANG ZIEHL & JONES**
**LLP, Appellee/Third Party**
**Defendant.**

**No. 09 Civ. 85(SAS).**

United States District Court,
S.D. New York.

June 2, 2009.

Philippe A. Zimmerman, Esq., Moses & Singer LLP, New York, NY, for PMG.

Andrew L. Margulis, Esq., Jung H. Park, Esq., Ropers, Majeski, Kohn & Bentley, New York, NY, for Pachulski.

*OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

Third Party Plaintiff Penthouse Media Group, Inc. ("PMG") appeals an Order of the United States Bankruptcy Court for the Southern District of New York dated December 11, 2008 (the "Order"). In that Order, Chief Judge Stuart M. Bernstein granted summary judgment in favor of Third Party Defendant Pachulski Stang Ziehl & Jones LLP ("Pachulski") and dismissed PMG's complaint for professional malpractice. For the following reasons, the Order of the bankruptcy court is reversed.

## I. BACKGROUND[1]

### A. The Bankruptcy Plan

In August 2003–in a case titled *In re General Media, Inc.*—PMG's predecessors-in-interest, General Media, Inc. and various affiliates (together, "the Debtor"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2] In September 2003, Pachulski was retained by the Debtor to assist in the formulation of their Chapter 11 Bankruptcy Plan.[3] In August 2004, the Fourth Amended Plan of Reorganization (the "Plan") was completed and confirmed.[4] According to Section 7.1.1 of the Plan, notice of the general rejection bar date ("Rejection Claims Bar Date")-which should have been applicable to then-employee Jane Homlish Krynicki's employment contract was to have been served on each party to an executory contract.[5] In October 2004, PMG was still unaware that Pachulski had failed to serve the requisite notice on Krynicki and establish a bar date for claims related to the terminations of Debtor's rejected severance plans pursuant to Section 7.3 of the Plan.[6]

---

1. The following facts are undisputed.

2. *See* 8/12/03 General Media, Inc. Voluntary Petition, Ex. 1 to 10/17/08 Declaration of Jung H. Park in Support of Pachulski's Motion for Summary Judgment ("Park Decl.").

3. *See* 9/17/03 Order Authorizing the Employment and Retention of Pachulski, Stang, Ziehl, Young, Jones & Weintraub, P.C. as Counsel for the Debtors and Debtors in Possession, Ex. 2 to Park Decl.

4. *See* 8/13/04 Order Confirming Debtors' Fourth Amended Joint Plan of Reorganization, Ex. 5 to Park Decl.

5. *See id.* ¶ 15 (directing Debtors to serve the notice of the rejection claims bar date on those parties whose contracts would be reject-

ed pursuant to Section 7.1.1 of the Plan and Schedule 7.1(B)).

6. *See* Debtors' Fourth Amended Plan Supplement, Schedule 7.1(B), Ex. 4 to Park Decl. (failing to list the Krynicki contract as a rejected executory contract); 8/20/04 Affidavit of Service of Denise Harris, Ex. 7 to Park Decl. (failing to list Krynicki as a person to whom notice was given); Debtors' Fourth Amended Joint Reorganization Plan, Ex. 3 to Park Decl. (noting that section 7.3 of the Plan—which applies to severance contracts other than those covered by Section 7.1.1— does not set a rejection bar date); 3/8/06 Letter from Pachulski to PMG ("3/8/06 Letter"), Ex. 5 to 11/3/08 Declaration of Ronald M. Terenzi, a member of Berkman, Henoch, Peterson & Peddy (the "Berkman firm") and

## B. Pachulski's Final Fee Application

In early October 2004, PMG terminated Krynicki's employment.[7] Later that same month, Krynicki's lawyer contacted PMG and demanded payment of severance.[8]

On October 22, Pachulski served and filed its final fee application for services rendered to the Debtor.[9] On November 30, Judge Bernstein held a hearing on Pachulski's fee application.[10] PMG did not oppose the application, and it was approved by the bankruptcy court on that day.[11] Pachulski continued to serve as PMG's lawyer in the winding down of the bankruptcy proceeding until September 2005 when it withdrew as counsel to PMG.[12] PMG had also retained the Berkman firm for assistance in its bankruptcy proceedings and other matters.[13]

## C. Krynicki's Lawsuit and PMG's Third Party Complaint

On February 2, 2005, Krynicki filed her Complaint against PMG and others seeking severance benefits.[14] After the Complaint was filed, PMG repeatedly received assurances from Pachulski that Krynicki had been properly served with notice.[15] Krynicki filed an Amended Complaint on February 6, 2007, asserting, inter alia, a claim for breach of contract.[16] On defendants' motion to dismiss, Judge Bernstein held that Krynicki had adequately stated a claim for breach of her employment agreement, noting that neither the Rejection Claims Bar Date nor any other bar date applied to Krynicki's severance pay claim.[17]

On July 9, 2007, PMG filed a third-party complaint to implead Pachulski.[18] PMG

counsel to PMG ("Terenzi Decl.") (erroneously confirming that notice had been sent to Krynicki); 10/25/06 Letter from Terenzi ("10/25/06 Letter"), Ex. 6 to Terenzi Decl. (erroneously informing Judge Bernstein that Krynicki had been provided adequate notice in accordance with the Plan); 1/25/07 Bankruptcy Court Conference Transcript at 9:1–7, Ex. 7 to Terenzi Decl. (same).

7. *See* Amended Complaint, *Krynicki v. PMG*, 05–3658 ("Krynicki Am. Compl.") ¶ 17; 10/28/04 Letter from Arnold N. Bressler, Krynicki's counsel ("Demand Letter"), Ex. 13 to Park Decl.

8. *See* Demand Letter. Not surprisingly, the letter did not disclose PMG's failure to notify Krynicki of a general rejection bar date or that the Plan did not establish a severance plan rejection bar date. *See id.*

9. *See* 10/22/04 Pachulski Fee Application, Ex. 9 to Park Decl.

10. *See* 11/30/04 Order Granting Applications for Final Allowance of Compensation and Reimbursement of Expenses, Ex. 15 to Park Decl.

11. *See id.;* Statement of Undisputed Material Facts in Support of Pachulski's Motion for Summary Judgment ("Pachulski Stmt. Undis-

puted Facts") ¶ 18; Counter-statement of Undisputed Material Facts of PMG in Opposition to Pachulski's Motion for Summary Judgment ("PMG Counter. Undisputed Facts") ¶ 18.

12. *See* 9/1/05 Withdrawal Letter from Pachulski to PMG ("Withdrawal Letter"), Ex. 3 to Terenzi Decl.

13. *See* Pachulski Stmt. Undisputed Facts ¶ 17; PMG Counter. Undisputed Facts ¶ 17. Although it is unclear when PMG formally retained the Berkman firm, it appears that the firm may have been representing PMG as early as October 2004, when the firm filed a number of monthly operating statements in the bankruptcy court on behalf of the "reorganized debtor." *See* Docket, *In re General Media,* 03 Civ. 15078 (Bankr.S.D.N.Y.).

14. *See In re General Media,* 368 B.R. 334 (Bankr.S.D.N.Y.2007).

15. *See, e.g.,* 3/8/06 Letter.

16. *See* Krynicki Am. Compl.

17. *See In re General Media,* 368 B.R. at 342.

18. *See* Third Party Complaint Against Pachulski.

alleged three causes of action: (1) negligence, (2) breach of fiduciary duty, and (3) professional malpractice.[19] The court subsequently dismissed the negligence and breach of fiduciary duty claims, leaving the malpractice claim in contention.[20]

### D. PMG's Third Party Complaint

On October 20, 2008, Pachulski filed a motion for summary judgment, arguing that PMG's malpractice claim is barred by the doctrines of res judicata and collateral estoppel based on the bankruptcy court's prior approval of its final fee application.[21] On December 11, 2008, the bankruptcy court granted summary judgment in favor of Pachulski.[22]

In the December 11, 2008 Order, Judge Bernstein ruled that res judicata applied to bar PMG's malpractice claim.[23] In so doing, the bankruptcy court relied heavily on the Western District of New York decision in *D.A. Elia Construction Corp. v. Damon & Morey, LLP.*[24] Judge Bernstein held that the court's approval of the fee application was a final order, that the bankruptcy court had jurisdiction to issue such approval, and that PMG and Pachulski were identical to the parties in the

previous proceeding because PMG was a party-in-interest to the fee application.[25] He also ruled that the causes of action were the same because both the fee application and the malpractice claim " 'require a finding as to the nature and the quality of the professional services, and thus, the core of operative facts or central factual question is the same.' " [26] Key to the decision was the bankruptcy court's finding that PMG "should have known of the facts [giving] rise to the malpractice claim" by the time of the fee application hearing.[27] PMG now appeals the grant of summary judgment to Pachulski.

## II. LEGAL STANDARD

### A. Bankruptcy Appeals

■ District courts are vested with appellate jurisdiction over bankruptcy courts.[28] Final orders of the bankruptcy court may be appealed to the district court as of right.[29] An order is final if " '[n]othing in the order ... indicates any anticipation that the decision will be reconsidered.' " [30] A grant of summary judgment is reviewed de novo by the appellate court.[31]

---

19. *See id.*

20. *See* 11/29/07 Order with Respect to Motion of Pachulski to Dismiss Third Party Complaint.

21. *See* Third Party Defendant Pachulski's Motion for Summary Judgment.

22. *See* 12/9/08 Order Granting Third Party Defendant Pachulski's Motion for Summary Judgment.

23. *See* Transcript of Chapter 11 Hearing re: Motion for Summary Judgment ("Summ.Judg.Tr.") at 28:16–20.

24. 389 B.R. 314 (W.D.N.Y.2008). *See also* Summ. Judg. Tr. at 25:14–26:2.

25. *See* Summ. Judg. Tr. at 26:2–10.

26. *Id.* at 26:12–15 (quoting *In re Image Innovations Holdings, Inc.,* 391 B.R. 255, 261 (Bankr.S.D.N.Y.2008)).

27. *Id.* at 27:9–13.

28. *See* 28 U.S.C. § 158(a).

29. *See id.* § 158(a)(1).

30. *In re AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999) (quoting *In re Palm Coast, Matanza Shores Ltd. P'ship,* 101 F.3d 253, 256 (2d Cir.1996)).

31. *See SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir.2009). *See also In re Treco,* 240 F.3d 148, 155 (2d Cir.2001) ("[W]e review de novo whether, viewing the record in the light most favorable to the nonmovant, [ ] any genuine and disputed issue of

## B. Res Judicata

 "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ....' "[32] "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.' "[33]

 The New York Court of Appeals has explained

"A determination whether the first action or proceeding genuinely provided a full and fair opportunity requires consideration of the realities of the [prior] litigation, including the context and other circumstances which ... may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." [34] "Included among the factors to be considered are 'the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, [and] the competence and expertise of counsel.' "[35]

 "To determine whether the doctrine of res judicata bars a subsequent action, [courts] consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." [36] "In the bankruptcy context, [courts] ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." [37]

 Two actions are the same when they "involve the same claim or nucleus of operative fact." [38] " 'To ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations ....' "[39]

 Even when all of the elements of res judicata are satisfied, a malpractice

material fact underlies the bankruptcy court's decision.") (citing *In re Blackwood Assocs.*, 153 F.3d 61, 67 (2d Cir.1998)).

32. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (quoting *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897)).

33. *Taylor v. Sturgell*, — U.S. —, —, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008) (quoting *Montana*, 440 U.S. at 153–54, 99 S.Ct. 970).

34. *Hickerson v. City of New York*, 146 F.3d 99, 109 (2d Cir.1998) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)).

35. *Id.* (quoting *Ryan*, 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487).

36. *In re Layo*, 460 F.3d 289, 292 (2d Cir.2006) (quoting *Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 87–88 (2d Cir.1997)).

37. *Id.* (quoting *Corbett*, 124 F.3d at 88).

38. *Id.* (internal quotations omitted).

39. *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir.2000) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997) (internal quotations omitted)).

claim remains viable unless a party "could and should have brought [it] in the former proceeding." [40] "In this context, important factors in this analysis include whether the fee hearing was an adversary proceeding or contested matter, the nexus between the order awarding [ ] fees and the claims now being asserted, and 'the amount of time that has elapsed since the case commenced.' " [41] Such a determination depends on "whether and to what extent [the party] had actual or imputed awareness prior to the fee hearing of a real potential for claims ... and whether the bankruptcy court possesse[s] the procedural mechanisms that ... allow [the party] to assert such claims." [42]

## IV. DISCUSSION

■ Pachulski continued to represent PMG until September 1, 2005 when Pa-chulski resigned as PMG's counsel. PMG now argues that this critical fact precludes summary judgment on res judicata grounds for two distinct reasons. *First,* it raises an issue of material fact with respect to whether PMG had a full and fair opportunity to raise the malpractice claim, considering that PMG had "no reason to believe that the attorneys seeking a fee had committed malpractice." [43] *Second,* it raises an issue of material fact with respect to whether PMG "should have known" about the malpractice claims at the time of the fee hearing because PMG had no reason to doubt both Pachulski's repeated assurances that it had properly performed its services and its representations that Krynicki's claims were baseless.[44] I agree.

---

**40.** *In re Intelogic Trace, Inc.,* 200 F.3d 382, 388 (5th Cir.2000). *Accord EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621 (2d Cir.2007) ("Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action.' ") (quoting *St. Pierre v. Dyer,* 208 F.3d 394, 399 (2d Cir.2000) (emphasis added)); *Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869, 875 (2d Cir.1991) (finding that a claim for tortious infliction of emotional distress against creditors should have been brought as part of a prior bankruptcy proceeding and was therefore barred by res judicata).

**41.** *In re Intelogic,* 200 F.3d at 388 (quoting *Matter of Howe,* 913 F.2d 1138, 1147 n. 28 (5th Cir.1990)).

**42.** *Id.*

**43.** Brief of PMG in Opposition to Pachulski's Motion for Summary Judgment ("PMG Mem.") at 12. Pachulski argues that PMG may not raise this issue for the first time on appeal. *See* Respondent Brief of Appellee/Third Party Defendant Pachulski Stang Ziehl & Jones, LLP ("Pachulski Mem.") at 19.

However PMG notes-and I agree-that this fact was squarely before the bankruptcy court. *See* PMG Counter. Undisputed Facts ¶ 45 ("It was not until September 1, 2005, nearly a year after the Fee Application and the demand by Krynicki for severance, that the Pachulski firm withdrew as counsel of record for the Reorganized Debtors."); Summ. Judg. Tr. at 21:17 ("We were working with Pachulski at the time."). Because PMG argued that it did not know and had no reason to know of the potential malpractice claim at the time of the fee hearing, the bankruptcy court should have considered the undisputed fact that Pachulski continued to represent PMG at the time of the fee application in its analysis.

**44.** *See* Reply Brief of PMG in Opposition to Pachulski's Motion for Summary Judgment ("PMG Rep. Mem.") at 10. Pachulski notes that PMG was represented by the Berkman firm at the time of the fee application hearing and thereafter and that Pachulski only remained as PMG's counsel in connection with "discrete" matters after the Plan went into effect on October 5, 2004. Pachulski Mem. at 20. It therefore argues that "[f]or all intents and purposes, after the Plan went effective and PMG[ ] had emerged as the reorganized debtor, the Pachulski Firm ceased to be PMG[ ]'s attorney ...." *Id.* This argument is

## A. Full and Fair Opportunity

Although Pachulski's fee application was approved by the bankruptcy court in the prior proceeding, I cannot conclude as a matter of law that PMG had a full and fair opportunity to litigate allegations of Pachulski's malpractice during that hearing. Many of the factors used to consider whether a party had a full and fair opportunity to litigate an issue favor PMG, particularly given PMG's continued retention of Pachulski as its counsel. For instance, one of the factors courts have considered is "the importance of the claim in the prior litigation." [45] PMG had just undergone a reorganization with the help of Pachulski as its counsel. The possibility that Pachulski may have committed malpractice while representing PMG during that reorganization may not have been at the forefront of PMG's concerns. In addition, PMG had no "incentive [or] initiative to litigate" the

malpractice issue,[46] considering that it expected Pachulski to continue to advise PMG in the winding down of its bankruptcy proceeding.[47]

Pachulski presents a number of cases in support of its argument that res judicata bars a subsequent malpractice suit against a professional when the fee application for that professional was previously considered and approved by a court.[48] However, in each of these cases, at the time of the fee application the relationship between the professional and client had either already been terminated or had deteriorated based on the client's dissatisfaction with that professional's service.[49] Neither situation is present here.

Of particular importance to this Court is the bankruptcy court's reliance on *D.A. Elia Construction Corp.*[50] Judge Bernstein concluded that *D.A. Elia* was directly on

both disingenuous and unpersuasive. Just because PMG had retained a second law firm does not change the fact that Pachulski continued to advise PMG and that PMG was entitled to place its trust in Pachulski.

**45.** *Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487.

**46.** *Id.*

**47.** *See Schweizer v. Mulvehill,* 93 F.Supp.2d 376 (S.D.N.Y.2000) ("Although the reasonableness of the fee was thus an issue [that had been] decided [ ], we cannot conclude as a matter of law that that determination should be binding on this court.... In this case, the decision invoked for purposes of applying collateral estoppel was made while plaintiff was represented by defendants, the very parties he now accuses of a breach of trust, misrepresentation and fraudulent omissions.").

**48.** *See* Pachulski Mem. at 11 (citing *In re Image Innovations Holdings,* 391 B.R. at 261; *Grausz v. Englander,* 321 F.3d 467, 473 (4th Cir.2003); *In re Iannochino,* 242 F.3d 36, 37 (1st Cir.2001); *In re Intelogic,* 200 F.3d at

386–87; *In re DA. Elia Constr. Corp.,* 389 B.R. at 319–20).

**49.** *See In re Iannochino,* 242 F.3d at 49 (noting that the Iannochinos' "relationship with their attorney had broken down" and that "[i]n each instance [of malpractice], the advice the Iannochinos now claim was improper resulted in almost immediate negative results"); *Grausz,* 321 F.3d at 474 (noting that at the time of the fee application hearing, "the Linowes [law] firm had withdrawn as Grausz's bankruptcy counsel due to his dissatisfaction with the firm's services"); *In re Image Innovations,* 391 B.R. at 258 (after fee application was approved, barring a subsequent malpractice suit from proceeding against a liquidation agent and auctioneer for disappointing auction proceeds that were approximately ten percent of the inventory's estimated cost value); *In re Intelogic,* 200 F.3d at 385–86 (noting in particular an internal memo-drafted by a board member prior to Ernst & Young's fee hearing-that complained of flaws in Ernst & Young's preparation of cash flow projections).

**50.** *See* Summ. Judg. Tr. at 25:14–16.

point,[51] but *D.A. Elia* is perhaps even more clearly distinguishable from the instant case than other cases cited by Pachulski, as in that case the malpractice claim was actually litigated during the fee application proceeding. *D.A. Elia* emphasized that

> many of the same allegations made by Elia in its [malpractice] complaint were previously made by Elia in its objections to Damon & Morey's final fee application. Specifically, Elia argued to the bankruptcy court that the firm had labored under a conflict of interest, had committed legal malpractice and had failed to turn over money owed to the estate. The bankruptcy court provided Elia with ample opportunity [to] raise those claims, but ultimately rejected them as meritless.[52]

The district court concluded that "it cannot be said that Elia was denied the opportunity to raise these [malpractice] claims in the prior action."[53] In the instant case, PMG raised no such objections at the fee hearing.[54]

 It would be unreasonable to require a party to bring a malpractice claim against attorneys who still represent that party. Indeed, under the continuous representation doctrine, the statute of limitations on professional malpractice claims are tolled while a malpractice plaintiff maintains an ongoing relationship with his attorney, as "the client has a right to repose confidence in the professional's

ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered . . . ."[55] At best, the question of whether PMG had a full and fair opportunity to litigate its malpractice claim in the previous proceeding is an issue of material fact that cannot be resolved on summary judgment.

### B. PMG's Awareness of Its Malpractice Claim

In addition to failing to consider whether the continued representation of PMG by Pachulski made it impossible for PMG to have had a full and fair opportunity to litigate its claim, the bankruptcy court also erred in concluding as a matter of law that PMG "had the facts [giving rise to its malpractice claim] at its fingertips and the motive to investigate them."[56] Judge Bernstein found significant that Krynicki had demanded over $320,000 in severance pay on October 28, 2004, which was six days after Pachulski filed its fee application and a month before the hearing.[57] He noted that had PMG begun an investigation into whether Krynicki had filed a proof of claim, it would have learned that Pachulski had failed to serve the requisite notice on Krynicki and that the firm had also failed to establish a bar date for claims related to the terminations of PMG's rejected severance plans.[58]

However, a demand by a former-and likely disgruntled-employee for severance

---

51. *See id.* at 25:14–26:25 (finding that its fee order for Pachulski was a final judgment on the merits, that the litigants were the same parties because PMG—as the Debtor's successor—had been a party-in-interest to the fee application, and that the causes of action are the same).

52. *D.A. Elia,* 389 B.R. at 319.

53. *Id.* at 320.

54. *See* Pachulski Stmt. Undisputed Facts ¶ 18; PMG Counter. Undisputed Facts ¶ 18.

55. *Carruthers v. Flaum,* 388 F.Supp.2d 360, 373 (S.D.N.Y.2005).

56. Summ. Judg. Tr. at 27:14–15.

57. *See id.* at 27:15–18.

58. *See id.* at 27:19–28:2.

pay would not necessarily have put PMG on notice that Pachulski had failed to properly execute the plan. Krynicki's demand letter did not apprise PMG that Krynicki had not been provided notice of a general rejection bar date.[59] While it would have been prudent for PMG to have begun an investigation of Krynicki's claim, I cannot conclude as a matter of law that PMG should have conducted one. The impetus to do so was severely weakened by Pachulski's continued representation of PMG. In addition, PMG notes that Pachulski "repeatedly argued" that it had provided Krynicki proper notice of the claim deadline, even as late as 2006.[60] There is at least a genuine issue of material fact as to whether PMG should have known about a potential malpractice claim against Pachulski despite continued assurances from Pachulski that Krynicki's claim was unfounded.

Pachulski argues-and Judge Bernstein apparently agreed-that "just because PMG[ ] did not understand the significance of the facts it now claims amount to malpractice, does not excuse PMG[ ] from opposing the fee application when those facts constituting the purported malpractice were known or should have been known at the time."[61] In support of this argument, Pachulski cites to the Fifth Circuit's decision in *In re Intelogic Trace.*[62]

*In re Intelogic Trace* is again distinguishable from the instant case. In that case the debtor—Interlogic Trace ("IT")— brought a malpractice suit against its accountant, Ernst & Young ("E & Y"), for failing to properly perform its accounting services in connection with its bankruptcy plan. Evidence showed that a board member of IT had sent an internal memorandum expressing concerns about the competency of the services provided by E & Y prior to the hearing.[63] Nevertheless, IT ultimately decided to use concerns over the quality of professional services to negotiate lower fees with E & Y in return for its unqualified support of E & Y's fee application.[64] The Fifth Circuit held that IT's malpractice claim was barred by res judicata, but the Court found particularly significant

> the Board's general awareness of the background facts underlying the present claims before the fee hearing, the Board's having realized the real possibility of a link between its flawed numbers and [E & Y's] services, [and] the Board's deliberate choice not to voice its concerns regarding the quality of services at the fee hearing . . . . [65]

Although PMG had a "general awareness of the background facts" underlying its malpractice claim,[66] there is no evidence that PMG made a "link" between Krynicki's demand for severance and a potential malpractice claim against Pachulski until six months after the fee hearing, when Krynicki first raised the issue of notice.[67] Even then, when PMG sent a letter to Pachulski to raise these concerns, Pachulski responded with an assurance that

---

59. *See* Demand Letter.

60. *See* PMG Rep. Mem. at 10; 3/8/06 Letter.

61. Pachulski Mem. at 12.

62. *See id.*

63. *See* 200 F.3d at 384–85.

64. *See id.* at 385.

65. *Id.* at 391.

66. Summ. Judg. Tr. at 11:7–14 (PMG conceding that it could have discovered its claim against Pachulski prior to the fee application hearing had it reviewed the plan documents).

67. *See* PMG's Opposition to Pachulski's Motion for Summary Judgment Before Judge Bernstein at 6.

Krynicki had indeed been served with adequate notice.[68] It was not until two and a half years later that Judge Bernstein discovered Pachulski's failure to notify Krynicki of the bar date after a detailed investigation of the Plan provisions and upon considering PMG's motion to dismiss Krynicki's claims.[69] Furthermore, far from affirmatively deciding not to challenge Pachulski's fee application, PMG had no reason to suspect that Pachulski's work was inadequate and in fact made no objection to the fee application and continued to retain Pachulski as its advisor until a year after the fee hearing. I must therefore disagree with the bankruptcy court's conclusion that it could decide-as a matter of law-that PMG should have known of its malpractice claim in October 2004.[70]

## V. CONCLUSION

For the reasons discussed above, the bankruptcy court's Order granting Pachulski's motion for summary judgment is reversed. This case shall be remanded to the United States Bankruptcy Court for the Southern District of New York for actions consistent with this opinion. The Clerk of the Court is directed to close this case.

SO ORDERED.

68. *See* 3/8/06 Letter.

69. *See* Summ. Judg. Tr. at 11:15–23.

70. Because I find that PMG has raised a genuine issue of material fact with respect to whether it had a full and fair opportunity to litigate the malpractice issue and whether it should have known of the malpractice claim at the time of the fee hearing, I do not consider PMG's third argument on appeal: that PMG had not sustained actual damages at the time of the fee hearing and therefore could not have raised the malpractice issue at that time. *See* PMG Mem. at 16.