[882 NE2d 381, 852 NYS2d 812]

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Respondent, v HSBC BANK USA, Appellant.

Argued January 10, 2008; decided February 12, 2008

## POINTS OF COUNSEL

*Phillips Lytle LLP,* New York City (*David J. McNamara* and *Patricia A. Mancabelli* of counsel), for appellant. I. The First Department erred in finding that the Insurance Company of the State of Pennsylvania's claims are not barred by res judicata even though they constitute an impermissible collateral attack on the Bankruptcy Court's jurisdiction and prior orders. (*O'Brien v City of Syracuse,* 54 NY2d 353; *Matter of Hunter,* 4 NY3d 260; *Winkler v Weiss,* 294 AD2d 428; *Katchen v Landy,* 382 US 323; *Weiss v Hagopian,* 251 AD2d 400; *Firedoor Corp. of Am. v Merlin Indus.,* 86 AD2d 577; *EDP Med. Computer Sys., Inc. v United States,* 480 F3d 621; *Matter of Baudoin,* 981 F2d 736; *Langenkamp v Culp,* 498 US 42; *Granfinanciera, S. A. v Nordberg,* 492 US 33.) II. The First Department erred because questions of fact preclude summary judgment in the Insurance Company of the State of Pennsylvania's favor. (*Securities & Exch. Commn. v American Bd. of Trade, Inc.,* 654 F Supp 361; *Independent Coal & Coke Co. v United States,* 274 US 640; *Martin v Briggs,* 235 AD2d 192; *Dwyer v Mazzola,* 171 AD2d 726; *Air Traffic Conference v Downtown Travel Ctr.,* 87 Misc 2d 151.)

*D'Amato & Lynch, LLP,* New York City (*Ronald H. Alenstein* and *Edward M. Roth* of counsel), for respondent. I. The decision below is not a collateral attack on any order of the Bankruptcy Court. (*Matter of Hunter,* 4 NY3d 260; *Dezer Entertainment Concepts, Inc. v City of New York,* 8 AD3d 37; *Lincoln First Commercial Corp. v New York State Tax Commn.,* 136 Misc 2d 478; *In re Brown,* 734 F2d 119; *Old Stone Bank v Tycon I Bldg. Ltd. Partnership,* 946 F2d 271; *Eastern Mins. & Chems. Co. v Mahan,* 225 F3d 330; *EDP Med. Computer Sys.,*

*Inc. v United States.,* 480 F3d 621; *Matter of Hamptons Hosp. & Med. Ctr. v Moore,* 52 NY2d 88; *Matter of Leisten v McCall,* 285 AD2d 897; *Matter of Haber Oil Co., Inc.,* 12 F3d 426.) II. No issues of fact preclude a finding of summary judgment for the Insurance Company of the State of Pennsylvania on the issue of liability. (*People v Gruttola,* 43 NY2d 116; *A.C. Transp. v Board of Educ. of City of N.Y.,* 253 AD2d 330; *815 Park Ave. Owners v Fireman's Ins. Co. of Washington, D.C.,* 225 AD2d 350; *Air Traffic Conference v Downtown Travel Ctr.,* 87 Misc 2d 151.)

**OPINION OF THE COURT**

GRAFFEO, J.

We are asked in this case to decide whether a Bankruptcy Court order allowing a creditor to seize a debtor's bank account is entitled to res judicata effect in a subsequent state proceeding alleging that a portion of the funds in the account were state tax proceeds that should not have been part of the bankruptcy estate. Because plaintiff and its subrogor had notice of the bankruptcy action and failed to alert the court that the funds at issue were tax receipts held in trust, we conclude that plaintiff cannot now challenge defendant's court-approved seizure of the funds.

I

Herkimer Wholesale Company, Inc. was a distributor of cigarettes and other goods. In order to sell cigarettes, Herkimer had to affix each package with a cigarette tax stamp obtained from the State of New York (*see* Tax Law § 471 [2]). As a licensed tax stamp agent, Herkimer purchased stamps directly from the State, either by cash payment or on credit, and later collected the taxes when it sold the cigarettes (*see* Tax Law § 472 [1]). Herkimer usually bought tax stamps on credit and was required to remit the taxes to the State within 30 days after purchasing the stamps. State law provides that any tax proceeds obtained by a licensed agent from the sale of cigarettes are to be held in trust for the State and such monies are not the property of the agent (*see* 20 NYCRR 532.2 [a], [b]). Herkimer also had to post a bond as security for unpaid stamps (*see* Tax Law § 472 [1]). To satisfy this requirement, Herkimer obtained a $2.2 million bond issued by plaintiff the Insurance Company of the State of Pennsylvania (ICSP).

In 1996, Herkimer restructured a business loan with defendant HSBC Bank USA (HSBC[1]) and gave the bank a first priority security interest in all of its property. HSBC declared Herkimer in default of the loan in November 1997 and the bank commenced an action in state Supreme Court to collect on the loan and security agreement.

A short time later, several of Herkimer's unsecured creditors initiated a chapter 7 involuntary bankruptcy proceeding in federal Bankruptcy Court. This automatically stayed HSBC's attempt to foreclose on Herkimer's assets in state court. HSBC therefore intervened in the bankruptcy proceeding and obtained an order that prohibited Herkimer from transferring any of its property except in the ordinary course of business. The Bankruptcy Court also ordered that Herkimer's cash assets be deposited with HSBC in a "cash collateral account."

In an effort to save its business, Herkimer persuaded the Bankruptcy Court to convert the chapter 7 liquidation action into a chapter 11 reorganization proceeding. In November 1997, Herkimer filed a list of its 20 largest unsecured creditors with the court, identifying the State of New York as its largest unsecured creditor. (Herkimer owed the State approximately $2 million in cigarette stamp taxes). This characterization was erroneous, however, because the taxes collected by Herkimer were being held in trust for the State (*see* 20 NYCRR 532.2 [b]) and should not have been part of Herkimer's bankruptcy estate (*see* 11 USC § 541 [d]; *Begier v IRS*, 496 US 53, 59 [1990] ["Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate' " in a bankruptcy proceeding]).

ICSP soon became aware of the tax deficiency and informed the State that Herkimer's bond was cancelled. The bond issuer also asked the State not to provide Herkimer with additional tax stamps on credit. Thereafter, Herkimer received tax stamps only if it paid the State cash.

An agreement was eventually reached between Herkimer, HSBC and some of the unsecured creditors that allowed Herkimer to continue operating its business as a "debtor-in-possession." The Bankruptcy Court approved the arrangement, directing that the cash collateral account be held jointly by

---

1. The original loans and restructured agreement were actually issued by Marine Midland Bank, a predecessor of HSBC, but for purposes of this opinion, we make no distinction between these financial institutions.

Herkimer and HSBC, subject to HSBC's "continuing first priority security interest" in the funds. The court also allowed monies in the collateral account to be transferred to a debtor-in-possession account to meet Herkimer's ordinary business expenses.

Herkimer then requested that the State Department of Taxation and Finance advise HSBC whether the bank could obtain a security interest in Herkimer's cigarette inventory or unused tax stamps. The Department informed HSBC that it would be unable to "acquire a secured interest in cigarette tax stamps whether affixed to cigarettes or not" because only licensed tax stamp agents, like Herkimer, may serve as the State's "fiduciaries and [they] must account to the State for any unused or unpaid for stamps." The Department cited *Lincoln First Commercial Corp. v New York State Tax Commn.* (136 Misc 2d 478 [Sup Ct, NY County 1987]), which held that a private entity could not obtain a security interest in an "account which includes the proceeds of the sale of tax stamps" because such funds belong to the government, not the agent that holds them (*id.* at 480-481).

This precipitated the filing of a proof of claim in Bankruptcy Court by the State of New York in December 1997 for approximately $2.2 million, representing unpaid cigarette taxes, penalties and interest. Although the State requested priority status for its claim, it incorrectly described the money Herkimer owed as a "debt" rather than as sovereign tax revenue being held in trust by the State's agent.

The State also sought to recover $2.2 million from ICSP—the maximum exposure on the bond. ICSP filed its own contingent proof of claim in the bankruptcy proceeding in February 1998. This claim similarly indicated that the money owed was premised on unpaid taxes but designated the claim as unsecured and nonpriority. Because the State and ICSP never informed Bankruptcy Court that the tax proceeds were being held in trust by Herkimer and should have been excluded from the bankruptcy estate, the court continued to treat the monies as the property of Herkimer subject to creditors' claims.

Despite its attempts to emerge from bankruptcy, Herkimer became unable to comply with the debtor-in-possession arrangement and had to surrender all of its collateral. The Bankruptcy Court issued an order dissolving the stay and, since HSBC's secured claim had priority over the other unsecured creditor

claims and the value of Herkimer's property was less than the total indebtedness owed to the bank, the court permitted HSBC to foreclose on all of Herkimer's collateral. HSBC did so, transferring more than $4 million from Herkimer's collateral account to itself, including the funds derived from cigarette taxes collected by Herkimer on the State's behalf. Neither the State nor ICSP objected to this liquidation and, ultimately, the case was reconverted into a chapter 7 proceeding. HSBC also foreclosed on Herkimer's inventory of cigarettes and sold them with the State's permission, retaining the proceeds.[2]

In the meantime, ICSP continued to refuse to honor the State's demand on Herkimer's bond. This resulted in the State commencing an action against ICSP in state Supreme Court in December 2000 to enforce the guaranty. ICSP asserted as a defense that its rights as a subrogee had been impaired by the State's failure to advise the Bankruptcy Court that the tax stamp revenue in Herkimer's possession was sovereign property distinct from the assets available to creditors. ICSP also initiated a third-party action against HSBC for allegedly misappropriating the tax proceeds with knowledge that these funds were being held in trust and were excludable from Herkimer's estate. Supreme Court granted summary judgment to the State on the bond claim and to HSBC on the third-party complaint. The Appellate Division affirmed, explaining that the third-party action was premature because ICSP had not paid on the bond and, thus, had not yet acquired subrogee status (see State of New York v Insurance Co. of State of Pa., 305 AD2d 916 [3d Dept 2003], lv denied 1 NY3d 502 [2003]).

In light of this judicial determination, ICSP paid on the bond, satisfying the taxes, penalties and interest owed to the State, and then initiated this lawsuit against HSBC in February 2004. Among other defenses, HSBC asserted that res judicata barred the relief sought in this action because neither the State nor ICSP had informed the Bankruptcy Court that Herkimer was in possession of tax trust funds, which caused the court to treat the monies as part of Herkimer's collateral available to satisfy creditors. Both parties moved for summary judgment and Supreme Court granted ICSP's motion as to liability. The Appellate Division, with one Justice dissenting in part, modified by dismissing one cause of action but otherwise affirmed, rejecting

---

2. Even after Herkimer's property was sold, HSBC was left with an uncollectible deficiency of more than $3 million.

HSBC's res judicata defense. The court later granted leave to appeal to this Court and certified the following question: "Was the decision and order of this Court, which modified the order of the Supreme Court, properly made?" We answer the question in the negative, reverse the order of the Appellate Division and grant HSBC's motion for summary judgment dismissing the complaint in its entirety.

## II

The doctrine of res judicata, or claim preclusion, is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" (*Allen v McCurry*, 449 US 90, 94 [1980]).[3] In federal court, subsequent litigation is prohibited if a prior court ruling " 'was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action' " (*EDP Med. Computer Sys., Inc. v United States*, 480 F3d 621, 624 [2d Cir 2007], quoting *In re Teltronics Servs., Inc.*, 762 F2d 185, 190 [2d Cir 1985]). Res judicata "applies with full force to matters decided by the bankruptcy courts . . . in a Chapter 7 liquidation where it is desirable that matters be resolved as expeditiously and economically as possible" (*EDP Med. Computer Sys., Inc. v United States*, 480 F3d at 624-625).

The dispute in this case primarily concerns the fourth element—whether ICSP has raised the same causes of action that were at issue in the bankruptcy proceeding. ICSP argues that it has not because HSBC's alleged misappropriation occurred after the Bankruptcy Court issued its decision dissolving the stay and allowing HSBC to foreclose the collateral bank account. Thus, ICSP contends, the propriety of HSBC's conduct could

---

**3.** We cite federal cases for the general contours of the doctrine because there are authorities suggesting that a court should apply the rules of res judicata followed in the jurisdiction that rendered the earlier court decision (*see e.g. Marrese v American Academy of Orthopaedic Surgeons*, 470 US 373, 380-381 [1985]; *Langerman v Langerman*, 303 NY 465, 474 [1952]; Siegel, NY Prac § 471, at 798-799 [4th ed]; Restatement [Second] of Conflict of Laws § 95, Comment *e*). Our State's "transactional" approach to res judicata is arguably broader than the principles adopted by the federal courts (*see e.g. Matter of Josey v Goord*, 9 NY3d 386, 389 [2007]; *Matter of Hunter*, 4 NY3d 260, 269 [2005]). Because we conclude that the federal law of res judicata precludes ICSP's claims, it is unnecessary for us to determine the extent to which New York principles may be relevant to the claim preclusion analysis in a case such as this.

not have been decided by the Bankruptcy Court. This assertion is unavailing.

Federal res judicata law applies to not only issues actually litigated, but also to "issues that . . . could have been raised" in the prior action (*Federated Department Stores, Inc. v Moitie*, 452 US 394, 398 [1981]) and "any other admissible matter which might have been offered" for the purpose of "sustain-[ing] or defeat[ing] the claim or demand" at issue in the earlier proceeding (*Commissioner v Sunnen*, 333 US 591, 597 [1948] [internal quotation marks omitted]). In our view, the same issue that was central to the bankruptcy proceeding is also of paramount importance in this appeal: what claimant was entitled to the money that was in Herkimer's collateral account? The Bankruptcy Court was undoubtedly the proper forum for adjudicating that question (*see generally Matter of Quality Holstein Leasing*, 752 F2d 1009, 1013-1014 [5th Cir 1985]). Indeed, deciding who is entitled to the property of an insolvent debtor is a central function of a bankruptcy court. Significantly, no new facts beyond those that were available in Bankruptcy Court are needed to determine the answer in this case (*cf. In re Teltronics Servs., Inc.*, 762 F2d at 193).

It is readily apparent (as ICSP admits) that neither the State nor ICSP—both of which formally intervened in the bankruptcy action—submitted proper claims to the Bankruptcy Court indicating that Herkimer's bank account included tax proceeds that were the sovereign property of the State of New York and, hence, were not available to satisfy creditors' claims against Herkimer's assets. Doing so certainly would not have been burdensome since the State simply had to declare that its money was being held in trust by Herkimer, or ICSP could have checked a box on its claim form indicating that the funds should be prioritized as tax proceeds owed to the state government. No excuse has been offered for this oversight and ICSP, as the State's subrogee that stood by while the other parties involved in the bankruptcy treated the funds as Herkimer's property, must bear the brunt of the neglect (*cf. EDP Med. Computer Sys., Inc. v United States*, 480 F3d at 627). And because the Bankruptcy Court was not asked to segregate the tax funds in the account, the court was within its power to treat the monies as assets of Herkimer's estate for distribution on HSBC's secured claim (*see generally Matter of Haber Oil Co., Inc.*, 12 F3d 426, 437 [5th Cir 1994]; *In re Black & Geddes, Inc.*, 58 BR

547, 552-554 [SD NY 1983]).[4] Consequently, the causes of action alleged in ICSP's complaint are barred by res judicata because almost a decade ago the State and ICSP had a full and fair opportunity to litigate the matter in Bankruptcy Court but chose not to do so.[5]

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, defendant's motion to dismiss the complaint in its entirety granted and the certified question answered in the negative.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order, insofar as appealed from, reversed, with costs, defendant's motion for summary judgment dismissing the complaint in its entirety granted and certified question answered in the negative.

---

**4.** For this reason, we reject ICSP's argument that the Bankruptcy Court's order allowing HSBC to foreclose on the bank account had no effect on the status of the tax proceeds because the order applied only to "collateral." Although it is true that tax proceeds cannot be collateral because they are not the property of the debtor, that fact is irrelevant here because all legal conclusions—whether erroneous or correct—are treated identically for purposes of res judicata (see e.g. Federated Department Stores, Inc. v Moitie, 452 US at 398) and the Bankruptcy Court's treatment of the funds in Herkimer's account as the company's property went unchallenged.

**5.** In light of our determination, HSBC's additional argument in favor of reversal is academic.