[893 NYS2d 95]

BRESLIN REALTY DEVELOPMENT CORP. et al., Respondents, v J. STANLEY SHAW et al., Appellants.

Second Department, January 5, 2010

**APPEARANCES OF COUNSEL**

*Abrams, Gorelick, Friedman & Jacobson, P.C.*, New York City (*Barry Jacobs* of counsel), for appellants.

*Rosenberg Calica & Birney, LLP*, Garden City (*Robert M. Calica* and *Edward M. Ross* of counsel), for respondents.

**OPINION OF THE COURT**

CHAMBERS, J.

We are asked in this case to decide whether the defendants are entitled to summary judgment dismissing the plaintiffs' causes of action which are based upon allegations of legal malpractice allegedly occurring during the defendants' representation of the plaintiff debtors in bankruptcy proceedings.

## I. Relevant Facts

The plaintiff Breslin Realty Development Corp. (hereinafter Breslin Realty) is a real estate developer, and the plaintiff Wilbur F. Breslin (hereinafter Breslin), is an officer, director, and shareholder of Breslin Realty. Breslin, along with the plaintiffs Easa Easa and Jack Easa, are principals in one or more of the plaintiff debtors. The plaintiffs Bay Harbour Associates, L.P. (hereinafter Bay Harbour), Huntington Square Associates, L.P. (hereinafter Huntington Square), Busy Bee Associates, L.P. (hereinafter Busy Bee), Rochester Associates, L.P. (hereinafter Rochester), Riverwood La Place Associates, LLC (hereinafter Riverwood), and Verleye & Jericho Associates, L.P. (hereinafter Verleye), are debtors that owned several shopping centers. The debtors filed bankruptcy petitions pursuant to chapter 11 (*see* 11 USC § 1101 *et seq.*) in the United States Bankruptcy Court for the Eastern District of New York (hereinafter the Bankruptcy Court). They were represented in the bankruptcy proceedings by the individual defendants, J. Stanley Shaw and John H. Hall, also known as John H. Hall, Jr., of the defendant law firm, Shaw, Licitra, Gulotta, Esernio & Schwartz, P.C. (hereinafter referred to collectively as Shaw).

Owing to the illness of J. Stanley Shaw, the law firm of Dollinger, Gonski & Grossman (hereinafter the Dollinger firm) was appointed special counsel for Bay Harbour, Huntington Square, Rochester, and Verleye to handle adversary proceedings conducted in the summer of 2000. Matthew Dollinger, a member of the Dollinger firm, stated in an affidavit that since he was actually engaged in another trial at the time of the confirmation hearing, the Dollinger firm did not participate in the confirmation hearing, which was instead handled by Shaw.

In a verified complaint dated March 18, 2005, the plaintiff alleged three causes of action. The first cause of action alleged acts of legal malpractice with respect to the so-called Leucadia agreement entered into in July 1999 between the debtors and Leucadia, Inc. (hereinafter Leucadia). Pursuant to this agreement, Leucadia, through its entity Luk-Shop, Inc., purchased mortgages on property owned by the debtors in exchange for entering into joint venture agreements with the debtors. The agreement set a deadline of December 15, 1999, by which date the debtors were required to obtain financing for restructuring. When Breslin was unable to obtain financing by that date and demanded "consensual foreclosure" and conveyance to the appropriate joint venture, Leucadia exercised its rights under the agreement to foreclose the mortgages for its own benefit.

The second cause of action alleged that in the summer of 2000, in adversary proceedings before the Bankruptcy Court, Shaw failed to assert that the mortgages held by Leucadia were non-recourse loans which could be asserted against the mortgaged properties only, and not against other assets of the debtors. The plaintiffs asserted that as a result of Shaw's failure to assert that the mortgages were non-recourse loans, "Leucadia not only took title to the Premises, but took all assets of the Breslin entities." The plaintiffs further alleged that Shaw failed to submit updated appraisals of the properties involved.[1]

In their third cause of action, the plaintiffs argued that Shaw breached a fiduciary duty to the plaintiffs by engaging in these acts of legal malpractice. This cause of action stands or falls with the causes of action sounding in legal malpractice (see Adamski v Lama, 56 AD3d 1071 [2008]; Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267, 271-272 [2004]).

By notice of motion dated August 22, 2006, Shaw moved for summary judgment against all of the plaintiffs. In its affirmation in support of the motion, it noted that Riverwood and Busy Bee did not participate in the adversary proceedings and confirmation hearing conducted in the summer of 2000.

Shaw's fee awards against Riverwood and Busy Bee were approved on September 22, 1999 and February 14, 2000, respectively, prior to the legal malpractice which allegedly occurred in the summer of 2000. Shaw stated that the assets of Busy Bee were sold less than 60 days after the commencement of its bankruptcy proceeding, for the sum of $12,000,000, which was distributed. Further, Riverwood's assets were not sold, and it emerged from bankruptcy in July 1999 without the equity holders losing their property.

Shaw argued that the claims of Bay Harbour, Huntington Square, Rochester, and Verleye were barred by the doctrine of res judicata, because they failed to object to Shaw's fee applications in the bankruptcy proceedings, despite the fact that they were aware of the alleged acts of malpractice. Shaw noted that, by letter dated January 29, 2003, counsel for one of Breslin's partners wrote to Paul Berger, Breslin's in-house counsel, that,

---

1. This allegation was raised in opposition to the defendants' motion for summary judgment. The plaintiffs further alleged that the defendants "failed to timely assume four ground leases for the properties upon which three large and valuable operating shopping centers were located," but acknowledged that no damages resulted from this alleged negligence.

in his view, the failure to object to a claim for professional fees in a bankruptcy proceeding barred a subsequent malpractice claim; therefore, a detailed objection should be prepared, setting forth the alleged malpractice claims. The letter noted that the Bankruptcy Court's interpretation of the Leucadia agreement was not affirmed by the United States Court of Appeals for the Second Circuit until January 23, 2003 (*see In re Bay Harbour Assoc., L.P.,* 56 Fed Appx 21 [2003], *cert denied sub nom. Bay Harbour Assoc., L.P. v Leucadia Natl. Corp.,* 540 US 818 [2003]). Therefore, the plaintiffs could explain their delay by claiming that their legal malpractice objections were premised upon the decision of the Second Circuit.

Shaw also observed that, on June 20, 2003, it entered into an agreement with Breslin Realty whereby Breslin Realty agreed to pay Shaw $100,000 in "final discharge" of any obligation for legal fees, "without prejudice to Client's or any of the Debtors' or partners of the Debtors' rights to pursue any claim against the Firm for acts of malpractice relating to the Luk-Shop Proceedings." This agreement was drafted at least in part by the Dollinger law firm, acting as attorney for Bay Harbour, Huntington Square, Rochester, and Verleye. Nevertheless, Shaw contends that the plaintiffs did nothing to pursue their claims, and on December 31, 2003 the Bankruptcy Court issued an order approving Shaw's fee application with respect to Bay Harbour, Huntington Square, Rochester, and Verleye.

As to the plaintiffs Wilbur Breslin, Breslin Realty, Easa Easa, and Jack Easa, Shaw sought summary judgment, based upon the defense of lack of standing, arguing that they were not Shaw's clients in the bankruptcy proceedings.

The plaintiffs, in opposition, acknowledged that Busy Bee's assets were sold separately. Breslin, in an affidavit, argued that even if the value of Busy Bee's property was excluded from the computation, the plaintiffs "had substantial equity that we lost and forfeited as a result of the Shaw defendants' malpractice."

In an order entered October 3, 2007, the Supreme Court rejected Shaw's claim of res judicata, focusing instead on the "equitable doctrine of collateral estoppel" (*Breslin Realty Dev. Corp. v Shaw,* 17 Misc 3d 1110[A], 2007 NY Slip Op 51919[U], *7 [2007]), and concluding that Shaw failed to meet its burden of establishing that the Bankruptcy Court "necessarily considered" the particular acts of legal malpractice asserted in the complaint (*id.* at *8). Nevertheless, the Supreme Court determined that Shaw did not commit malpractice. However, upon

reargument, the Supreme Court found that Shaw failed to meet its burden of establishing that it adequately represented the debtors' interests in dealing with Leucadia (*see Breslin Realty Dev. Corp. v Shaw,* 19 Misc 3d 1127[A], 2008 NY Slip Op 50887[U] [2008]).

II. Res Judicata and Collateral Estoppel

Under the doctrine of res judicata, a final judgment precludes reconsideration of all claims which could have or should have been litigated in the prior proceedings against the same party (*see Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d 343, 347 [1999]). The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in the prior action or proceeding, and decided against that party or those in privity, whether or not the tribunals or causes of action are the same (*see Ryan v New York Tel. Co.,* 62 NY2d 494, 501-502 [1984]). Once the party seeking the benefit of collateral estoppel establishes that the identical issue was "material" to a prior judicial or quasi-judicial determination, the party to be estopped bears the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding (*id.*). Contrary to the determination of the Supreme Court, the proponent of the doctrine of collateral estoppel need not demonstrate that the particular theory in support of a cause of action was actually raised and litigated in the prior action or proceeding (*see Matter of Schulz v New York State Legislature,* 278 AD2d 710, 711 [2000]; *Williams v Steinberg,* 211 AD2d 597 [1995]; *Lanzano v City of New York,* 202 AD2d 378, 379 [1994]; *In re Sokol,* 113 F3d 303, 306 [1997]).

Where the prior adjudication involved the same parties and the same cause of action, res judicata applies. "Under res judicata, or claim preclusion, a valid final judgment bars future actions between the parties on the same cause of action . . . [a]s a general rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy' " (*Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d 343, 347 [1999], quoting *O'Brien v City of Syracuse,* 54 NY2d 353, 357 [1981]; *see Insurance Co. of State of Pa. v HSBC Bank USA,* 10 NY3d 32 [2008]).

III. Final Award of Defendants' Fees in Bankruptcy Proceeding

Under New York State law, a determination fixing a defendant's fees in a prior action brought by the defendant against the

plaintiff for fees for the same legal services which the plaintiff alleges were negligently performed, necessarily determines that there was no legal malpractice (*see Wallenstein v Cohen,* 45 AD3d 674 [2007]; *Koppelman v Liddle, O'Connor, Finkelstein & Robinson,* 246 AD2d 365, 366 [1998]; *Afsharimehr v Barer,* 303 AD2d 432 [2003]; *Altamore v Friedman,* 193 AD2d 240, 246 [1993]). The determination awarding fees bars the claim sounding in legal malpractice pursuant to both the doctrine of res judicata and the doctrine of collateral estoppel (*see Blair v Bartlett,* 75 NY 150 [1878]; *Izko Sportswear Co., Inc. v Flaum,* 63 AD3d 687 [2009]; *Ahearn v Arvan,* 2 AD3d 469 [2003]; *Chisholm-Ryder Co. v Sommer & Sommer,* 78 AD2d 143 [1980]).

In *Insurance Co. of State of Pa. v HSBC Bank USA* (10 NY3d 32, 38 n 3 [2008]), the Court of Appeals observed that there are "authorities suggesting that a court should apply the rules of res judicata followed in the jurisdiction that rendered the earlier court decision." Therefore, without deciding to what extent New York res judicata law is relevant to the res judicata effect of a decision of a Federal Bankruptcy Court, the Court applied the federal rule which bars consideration of "not only issues actually litigated, but also . . . 'issues that . . . could have been raised' in the prior action" (*Insurance Co. of State of Pa. v HSBC Bank USA,* 10 NY3d at 39, quoting *Federated Department Stores, Inc. v Moitie,* 452 US 394, 398 [1981]).

In bankruptcy proceedings, the general rule arising under 11 USC § 330 (a) (4) is that "a finding of malpractice would mean that the attorneys were not entitled to compensation for those services found to be substandard" and, accordingly, failure to raise the malpractice claims when the final fee applications were considered and approved by the Bankruptcy Court barred later litigation of such claims under principles of res judicata (*In re Iannochino,* 242 F3d 36, 42 [2001]; *see Grausz v Englander,* 321 F3d 467 [2003]; *In re Intelogic Trace, Inc.,* 200 F3d 382 [2000]; *cf. In re Boddy,* 950 F2d 334 [1991]). Res judicata bars future litigation between the same parties or those in privity arising out of transactions giving rise to a cause of action which could have been raised in a prior bankruptcy proceeding (*see Truesdell v Donaldson, Lufkin & Jenrette Sec. Corp.,* 281 AD2d 334 [2001]; *Evergreen Bank v Dashnaw,* 246 AD2d 814 [1998]). An exception lies if the plaintiff was deceived in the prior action or proceeding (*see Izko Sportswear Co., Inc. v Flaum,* 25 AD3d 534 [2006]; *cf. Penthouse Media Group, Inc. v Pachulski Stang Ziehl & Jones LLP,* 406 BR 453 [SD NY 2009, Scheindlin, J.]).

█ Applying these principles, we conclude that the final award of fees in the bankruptcy proceeding bars the plaintiffs' malpractice claim based upon the same services in the present litigation. The final fee award in the bankruptcy proceeding was a determination on the merits, barring the legal action sounding in legal malpractice pursuant to the doctrine of res judicata (*see Izko Sportswear Co., Inc. v Flaum,* 25 AD3d 534 [2006]).

Further, we are unpersuaded that there is evidence in this case that the defendants deceived the debtors or the Bankruptcy Court. The June 2003 agreement demonstrates that the plaintiffs were aware of the factual basis of their malpractice claim at the time of the defendants' fee application. Moreover, the June 2003 agreement was drafted at least in part by separate and independent counsel—the Dollinger law firm. Thus, on the date that the Bankruptcy Court entered the defendants' final award, December 15, 2003, the debtors had ample opportunity to raise their malpractice claims as objections to the fee award. Accordingly, we conclude that the plaintiffs failed to meet their burden of demonstrating under the doctrine of collateral estoppel that they lacked a full and fair opportunity to litigate the legal malpractice claim in the Bankruptcy Court (*see Izko Sportswear Co., Inc. v Flaum,* 25 AD3d 534 [2006]; *cf. Penthouse Media Group, Inc. v Pachulski Stang Ziehl & Jones LLP,* 406 BR 453 [SD NY 2009, Scheindlin, J.]).

The plaintiffs further claim that the June 2003 agreement carved out an exception to res judicata. Under Restatement (Second) of Judgments § 26, a court may reserve "for later resolution" an issue that might otherwise have been adjudicated in the initial proceeding (*see Central States, Southeast & Southwest Areas Pension Fund v Hunt Truck Lines, Inc.,* 296 F3d 624, 629 [2002]; *Apparel Art Intl., Inc. v Amertex Enters. Ltd.,* 48 F3d 576, 586 [1995]; *Landau, P.C. v LaRossa, Mitchell & Ross,* 11 NY3d 8 [2008]; *Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d at 349). The cause of action must be "expressly" reserved by the court (*D & K Props. Crystal Lake v Mutual Life Ins. Co. of N.Y.,* 112 F3d 257, 260 [1997]; *see Browning v Levy,* 283 F3d 761, 774 [2002]). Here, the June 2003 agreement fails to meet those criteria because it was an agreement between the parties, not a determination by the court; there was no express reservation by the Bankruptcy Court of a legal malpractice cause of action. Accordingly, summary judgment should have been granted dismissing the complaint insofar as asserted on behalf of Bay Harbour, Huntington Square, Rochester, and Verleye.

IV. Riverwood and Busy Bee Fee Awards

■ Shaw's fee awards against Riverwood and Busy Bee were approved on September 22, 1999 and February 14, 2000, respectively, before the legal malpractice which occurred at the confirmation hearing in the summer of 2000. Res judicata does not bar a claim to recover damages for legal malpractice relating to transactions which occurred after the fee awards on those cases, since claims relating to transactions cannot be resolved before the transactions occur (*see O'Brien v City of Syracuse*, 54 NY2d 353, 358 [1981]).

However, notably, Riverwood emerged from bankruptcy in July 1999, more than one year prior to the confirmation hearing in the summer of 2000, and Busy Bee's assets were sold separately, and the proceeds distributed. Shaw established as a matter of law that, since they did not participate in the confirmation hearing, the alleged malpractice which occurred at that hearing did not affect them. On this question, the plaintiffs did not raise a triable issue of fact. Accordingly, summary judgment should have been granted dismissing the complaint insofar as asserted on behalf of Busy Bee and Riverwood.

V. Nonparty Malpractice Claims

■ The remaining plaintiffs, Easa Easa, Jack Easa, Breslin, and Breslin Realty, were not debtors in the bankruptcy proceedings. The Easas' claim to standing was derived from their interests as limited partners in the limited partnerships Bay Harbour and Busy Bee. However, the Easas assert no damages independent of damages incurred by those limited partnerships. Moreover, they were not parties to the Leucadia agreement. Accordingly, the Easas had no standing (*see Eurycleia Partners, LP v Seward & Kissel, LLP,* 12 NY3d 553 [2009]), and summary judgment should have been granted dismissing the complaint insofar as asserted on their behalf.

However, J. Stanley Shaw acknowledged at his deposition that his law firm represented Breslin individually. Breslin claimed that Shaw represented him and Breslin Realty with respect to the instant transactions as part of a longstanding attorney-client relationship. Accordingly, Shaw failed to establish as a matter of law that Breslin and Breslin Realty lacked standing (*see Town Line Plaza Assoc. v Contemporary Props.*, 223 AD2d 420 [1996]), and summary judgment was properly denied with respect to them.

The parties' remaining contentions are without merit or need not be reached in light of our determination.[2]

The appeal from the order entered October 3, 2007, is dismissed, as the defendants are not aggrieved by that order (*see* CPLR 5511), and the order dated April 21, 2008, is modified, on the law, by deleting the provisions thereof which, upon reargument, in effect, vacated so much of the order entered October 3, 2007, as granted those branches of the defendants' motion which were for summary judgment dismissing the complaint insofar as asserted on behalf of the plaintiffs Easa Easa, Jack Easa, Bay Harbour Associates L.P., Huntington Square Associates, L.P., Rochester Associates, L.P., Busy Bee Associates, L.P., Verleye & Jericho Associates, L.P., and Riverwood La Place Associates, LLC, and substituting therefor provisions, upon reargument, adhering to so much of the determination in the order entered October 3, 2007, as granted those branches of the defendants' motion; as so modified, the order dated April 21, 2008, is affirmed.

RIVERA, J.P., FLORIO, and DICKERSON, JJ., concur.

Ordered that the appeal from the order entered October 3, 2007, is dismissed, without costs or disbursements, as the defendants are not aggrieved by that order (*see* CPLR 5511); and it is further,

Ordered that the order dated April 21, 2008, is modified, on the law, by deleting the provisions thereof which, upon reargument, in effect, vacated so much of the order entered October 3, 2007, as granted those branches of the defendants' motion which were for summary judgment dismissing the complaint insofar as asserted on behalf of the plaintiffs Easa Easa, Jack Easa, Bay Harbour Associates L.P., Huntington Square Associates, L.P., Rochester Associates, L.P., Busy Bee Associates, L.P., Verleye & Jericho Associates, L.P., and Riverwood La Place Associates, LLC, and substituting therefor provisions, upon reargument, adhering to so much of

---

2. We note that although it appears that under federal bankruptcy law, the debtors' claims sounding in legal malpractice were not assets of the bankruptcy estate, since they accrued after the bankruptcy petitioners were filed, the law on this issue is by no means conclusive (*see Niedermeier v St. Joseph Hosp.*, 188 Misc 2d 107 [2001] [and the cases cited therein]; *In re Witko*, 374 F3d 1040 [2004]; *Matter of Griseuk*, 165 BR 956, 958 [1994]). The plaintiffs further muddy the waters by alleging that "[s]ome of the essential acts of malpractice were committed by the Shaw Firm prior to the commencement of bankruptcy proceedings."

the determination in the order entered October 3, 2007, as granted those branches of the defendants' motion; as so modified, the order dated April 21, 2008, is affirmed, without costs or disbursements.