**Peter J. CORINES, Plaintiff,**

v.

**AMERICAN PHYSICIANS INSURANCE TRUST, USI Administrators, Inc., Hartford Life Insurance Co., Continental Casualty d/b/a C.N.A. Insurance Company, Defendants.**

**No. 09 Civ. 10348 (NRB).**

United States District Court, S.D. New York.

Feb. 25, 2011.

Opinion Denying Reconsideration April 26, 2011.

Peter J. Corines, Eastchester, NY, pro se.

Randi F. Knepper, Esq., McElroy, Deutsch, Mulvaney & Carpenter LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Peter J. Corines, appearing *pro se*, brings an action against his insurers seeking a declaratory judgment that he is entitled to disability insurance income benefits dating back to February 4, 1999 and a

refund of premiums paid since that date. Defendants American Physicians Insurance Trust ("APIT"), National Employee Benefit Companies, Inc. ("NEBCO"), as successor to USI Administrators, Inc., Hartford Life Insurance Company ("Hartford"), and Continental Casualty Co. ("Continental"), incorrectly captioned as "Continental Casualty Company d/b/a C.N.A. Insurance Company", move to dismiss the action on the grounds that this Court lacks subject matter jurisdiction over plaintiff's claims which have already been fully litigated in the New York state courts, or alternatively, that this action is barred by claim preclusion. In response, the plaintiff moves pursuant to Fed. R.Civ.P. 12(f) to strike certain statements in the Defendants' Declaration in Support of the Motion as redundant, immaterial, irrelevant, or scandalous. For the reasons discussed below, the plaintiff's motion is denied and the defendants' motion is granted.

## BACKGROUND

### I. Facts

From 1976 until 1999, Peter J. Corines was licensed to practice medicine in the State of New York. He operated a medical practice as a surgeon with offices in Manhattan and Queens. On November 25 1997, he purchased a disability income insurance policy from APIT, which was underwritten at the time by Continental. It provided benefits of $10,000 per month in the event of disability. In June 1998, Corines injured his back while doing sit-ups. He was subsequently diagnosed with a spondylolisthesis, more colloquially known

as a slipped vertebra. On October 20 1998, he submitted a claim to Continental asserting that his injury constituted a total disability which prevented him from working.

Six days prior to Corines's submission of this claim, on October 14 1998, the New York State Board for Professional Medical Conduct had revoked Corines's medical license for negligence, incompetence, fraud, and failure to maintain accurate and complete patient records. The revocation became effective on February 4, 1999, and Corines pursued an Article 78 challenge[1] before the Appellate Division of the New York State Supreme Court, Third Judicial Department. On December 23, 1999, the Appellate Division ruled against Corines, confirming the Board's determination revoking his license. *Corines v. State Bd. for Prof'l Med. Conduct,* 267 A.D.2d 796, 700 N.Y.S.2d 303 (App.Div. 3d Dep't 1999), *leave to app. denied,* 95 N.Y.2d 756, 712 N.Y.S.2d 448, 734 N.E.2d 760 (2000).

In June 2000, a jury in the Queens County Supreme Court convicted Corines of aiding and abetting another person in the unlicensed practice of medicine, in violation of New York Education Law § 6512(1).[2] During the trial, Corines admitted performing medical procedures in July and December of 1998, during the period he had claimed to be totally disabled by his back injury. On December 13, 2000, after concluding a lengthy investigation, Continental denied Corines's claim for disability benefits on the basis of these admissions.

---

1. Under New York law, a petitioner may seek judicial review of a determination by the State Board for Professional Medical Conduct, pursuant to Article 78 of the Civil Practice Law and Rules. *See* Public Health Law § 230–c(5).

2. Corines unsuccessfully appealed his conviction, which was affirmed by the Appellate Division, Second Department, *People v. Corines,* 308 A.D.2d 457, 764 N.Y.S.2d 117 (App. Div. 2d Dep't 2003), and by the New York Court of Appeals, *People v. Santi,* 3 N.Y.3d 234, 785 N.Y.S.2d 405, 818 N.E.2d 1146 (2004).

On March 28, 2001, Corines brought a declaratory judgment action against Continental and two other insurers in New York County Supreme Court seeking to establish his entitlement to disability income benefits. In January 2002, Corines's state court action was stayed because he was indicted by the United States Attorney for the Southern District of New York on charges of conspiracy and mail fraud. On December 1, 2003, Corines pled guilty to one count of conspiracy to defraud and one count of mail fraud.[3] As part of his plea allocution, he again admitted performing numerous medical procedures between June 1998 and January 1999. He was sentenced to 18 months in prison with three years of supervised release and ordered to pay $70,000 in restitution.

On May 31, 2005, New York Country Supreme Court Justice Shafer granted summary judgment dismissing Corines's action against Continental. She concluded that "Corines' own stipulation and testimony provide sufficient evidence that he continued his medical/surgical practice after he claimed to be totally disabled, and until his medical license was finally revoked in February 1999." (Def.'s Decl. Ex. F, 10.) Corines appealed to the Appellate Division, First Department, which unanimously affirmed the lower court's decision. *See Corines v. Sentry Life Ins. Co.*, 33 A.D.3d 443, 821 N.Y.S.2d 885 (App.Div. 1st Dep't 2006). He then sought leave to appeal from the Court of Appeals, which was denied. *See Corines v. Sentry Life Ins. Co.*, 9 N.Y.3d 914, 844 N.Y.S.2d 167, 875 N.E.2d 886 (2007).

On November 12, 2008, Corines sent a letter to Hartford again claiming disability income benefits under his APIT policy, which had been transferred from Continental to Hartford in 2000. In that letter, Corines states that he "became legally disabled from the practice of medicine on February 4, 1999" and quotes the following provision from his policy:

"Total Disability" means any loss of time, duties, and income as a result of any regulation, restrictions or modifications of policy set by:

1. A licensing board . . .

2. Any State or Federal Agency . . .

(Am. Compl. Ex. 5.) On November 20, 2008, Hartford sent Corines a letter in reply, suggesting that his notice of claim was not timely and requesting that Corines provide further information within the next twenty-one days.

On January 1, 2009, Corines sent Hartford the requested information and an accompanying letter, in which he stated, "[M]y present application is for benefits based upon the legal disability noted above and in my letter of November 12, 2008. It should be noted that my inability to work is primarily due to this spinal injury, or 'illness,' which arose several months before the legal disability due to the license revocation." On March 13, 2009, Hartford sent Corines a letter stating that his file remained under review. He alleges that he received no further communication from Hartford prior to the commencement of this action.

**3.** We note that the mail fraud charges in the indictment arose out of a scheme to defraud defendant Continental as well as several other insurers by applying for income disability insurance policies at a time when Corines already knew the Office of Professional Medical Conduct had begun disciplinary proceedings against him which would ultimately result in the loss of his medical license. Although the only count of mail fraud to which Corines pled guilty concerned a policy he obtained from a different insurer, his conduct in obtaining the Continental policy at issue in this case was remarkably similar to the criminal conduct he admitted in his plea. Nonetheless, as Corines reminds us, the count of mail fraud concerning his Continental policy was never proven.

## II. Procedural History

On August 4, 2009, Corines filed a complaint against the defendants with the *Pro Se* Office of this Court. On December 21, 2009, Judge Preska issued an order granting Corines leave to submit an amended complaint correcting certain deficiencies in his pleadings. On January 6, 2010, Corines filed his Amended Complaint and the case was subsequently assigned to Judge Robinson. On August 11, 2010, the defendants filed the instant motion to dismiss. The case was reassigned to this Court on November 15, 2010. Corines filed his brief in opposition and a motion to strike certain parts of the defendants' declaration on December 2, 2010.

## DISCUSSION

### I. Legal Standard

■ Defendants move for dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and the *Rooker–Feldman* doctrine. Alternatively, they seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6) and the principle of *res judicata*. For the purposes of this motion, we accept as true all well-pleaded factual allegation in the Amended Complaint and draw all reasonable inferences in favor of the plaintiff. *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004); *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Because the plaintiff is appearing pro se, we must read his pleadings liberally and interpret them to raise the strongest arguments they suggest. *See Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

### II. Subject Matter Jurisdiction

■ The *Rooker–Feldman* doctrine developed out of the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) holding that federal district courts lack jurisdiction to review state court final judgments, other than in the context of a petition for a writ of *habeas corpus*. As recently as 1996, *Rooker–Feldman* was understood to be "at least coextensive with" principles of preclusion, possibly even superseding them. *See Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 199–200 (2d Cir.1996). That broad understanding of the doctrine was corrected by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), which limited the application of *Rooker–Feldman* to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The Second Circuit interprets *Exxon* as specifying the following four requirements that must be met for *Rooker–Feldman* to apply: (1) the federal-court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state court judgment must have been rendered before the district court proceedings commenced. *Hoblock v. Albany County Bd. Of Elections,* 422 F.3d 77, 85 (2d Cir.2005).

The present plaintiff does not dispute that the first and fourth requirements are met. Instead plaintiff argues that the state court judgment only eliminated one basis for his claim to disability benefits, namely his back injury, leaving him free to assert other bases, such as the revocation of his medical license. Therefore, he appears to argue that the state court judgment is not the cause of his present injury, and need not be reviewed or rejected in order to grant him the relief he seeks.

Indeed, plaintiff even asserts that the state court's dismissal of his claim operates in his favor to preclude Continental from denying that he is "legally disabled" since that phrase was used by Justice Shafer in *dicta* to describe plaintiff's largely self-inflicted loss of his medical license.[4]

Defendants argue that, because plaintiff now claims benefits under the same policy that was at issue in the state court proceeding, he is complaining of the injury caused by that court's judgment. In addition, defendants suggest that if this Court were to hold that plaintiff's license revocation did entitle him to benefits, we would be overruling the state court's decision that his back injury did not. Consequently, they urge us to find that all four requirements for the application of *Rooker–Feldman* are met and to dismiss for lack of jurisdiction.

■ We are not persuaded that the present case falls within the narrow scope of the *Rooker–Feldman* doctrine. Plaintiff's present claim, although it denies the legal conclusion reached by the state court in a prior proceeding, asserts his entitlement to benefits over a different time period than his prior claim, for a different reason, and under different language in the policy. We therefore find it to have a distinct basis. As the Supreme Court noted in *Exxon*, it is not the court's jurisdictional limits, but the principles of preclusion which properly determine whether a party is permitted to re-litigate a matter previously litigated in state court by "present[ing] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. at 293, 125 S.Ct. 1517 (quoting *GASH Assocs. v.*

*Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

As there is no dispute over complete diversity or the amount in controversy, we find that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

## III. Claim Preclusion

■ The doctrine of claim preclusion, or *res judicata*, provides that a final judgment on the merits in an earlier action "precludes the parties or their privies from relitigating issues that were or could have been raised" in that action. *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997). Thus, "claims are precluded, even if not raised in the prior action, if the party against whom the doctrine is asserted had a full and fair opportunity to litigate them at that time." *Mudholkar v. Univ. of Rochester*, 261 Fed.Appx. 320, 321 (2d Cir.2008) (internal quotation omitted). Although claim preclusion is normally raised as an affirmative defense, *see* Fed. R.Civ.P. 8(c), "[d]ismissal under Fed. R.Civ.P. 12(b)(6) is appropriate when a defendant raises claim preclusion ... and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir.2000).

■ The preclusive effect of a state court's judgment is dictated by the full faith and credit statute, 28 U.S.C. § 1738, which "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Because the judgment of a New

---

4. We note that, as Justice Shafer clearly explained in her opinion, the reason plaintiff was not entitled to recovery is that he fraudu-

lently claimed to be totally disabled at a time when he was in fact working, not that he simply-asserted the wrong basis for his claim.

York court is at issue in the present case, we apply New York's transactional approach to claim preclusion, which is "arguably broader than the principles adopted by the federal courts," *Ins. Co. of State of Pennsylvania v. HSBC Bank*, 10 N.Y.3d 32, 38 n. 3, 852 N.Y.S.2d 812, 882 N.E.2d 381, 385 n. 3 (2008). Under the transactional approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158, 1159 (1981). In order to determine whether particular claims arise out of the same transaction, the New York Court of Appeals uses a "pragmatic test ... analyzing whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100–01, 810 N.Y.S.2d 96, 843 N.E.2d 723, 725 (2005) (quoting *Restatement (Second) of Judgments* § 24(2) (2010)).

▆ Applying this test to the plaintiff's present claim for declaratory relief and his prior claim in state court, we find that they clearly arose out of the same transaction. Both claims were brought to establish his entitlement to income disability benefits under his Continental policy, based on the fact that plaintiff would be unable to ever work again as a surgeon. Although plaintiff's back injury occurred several months before he lost his medical license, both facts were already available to plaintiff in 2001 when he brought suit in state court. We recognize the glaringly obvious point that a back injury and a revoked license consist of different facts. Nonetheless, the underlying transaction at issue is the Continental policy, which appears to make both facts relevant to a determination of plaintiff's entitlement to benefits. We therefore find plaintiff's claims for injury and for legal disability to be sufficiently related in time, origin, and motivation so as to constitute a convenient trial unit, and their treatment as such would conform to the parties' expectations. Contrary to plaintiff's assertions,[5] nothing prevented him from arguing his theory of entitlement based on "legal disability" before Justice Shafer, who was well-aware that plaintiff's license had been revoked. Because claim preclusion bars a plaintiff from splitting his claim into two suits premised on different theories of recovery, *Reilly v. Reid*, 45 N.Y.2d 24, 30, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978), plaintiff's present suit for declaratory judgment on the issue of legal disability cannot be pursued before this Court.

▆ Plaintiff argues that his state court action falls within an exception to the doctrine of claim preclusion for declaratory judgment actions. New York law recognizes a declaratory judgment exception which "limits the preclusive effect of the

---

**5.** We note plaintiff's suggestion that he was denied the opportunity to claim legal disability in state court when Justice Shafer refused to permit him to revise his complaint at a late stage of the litigation. As Justice Shafer's opinion makes clear, plaintiff's untimely proposed amendment was an attempt to replace his claim of "Total Disability" with a claim of "Residual Disability," not to change the basis of his "Total Disability" claim from actual injury to legal disability. Furthermore, the legal briefs submitted by plaintiff's counsel in that case and the subsequent appeal assert claims for "legal disability." (Def.'s Decl. Ex. G 5, Ex. I 39). Therefore, although it is enough for the purposes of claim preclusion that plaintiff *could have* argued that he was legally disabled in his state court action, it is apparent that Plaintiff *actually did* assert this argument.

declaratory judgment to the 'subject matter of the declaratory relief sought' and permits the plaintiff or defendant to 'continue to pursue further declaratory or coercive relief.'" *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir.2010) (quoting *Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368 (2d Cir.1992)). However, the declaratory judgment exception is inapplicable when the request for declaratory relief is combined or followed with coercive relief. *Id.* at 196. Plaintiff's state court action included claims for breach of contract and bad faith, and sought not only declaratory relief but monetary damages, including punitive damages.[6] It therefore does not fall within the declaratory judgment exception, and the ordinary claim preclusion principles are fully applicable. *See* 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4446, at 313–14 ("So long as the request for declaratory relief is combined or followed with coercive relief, the claim-preclusion rules that apply to actions for coercive relief apply with full force.").

## IV. Plaintiff's Motion to Strike

▆▆ Under Fed.R.Civ.P. 12(f), a party may move for the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Plaintiff seeks to wield this rule against much of the Defendants'

Declaration in Support of Their Motion to Dismiss, which is not technically a pleading according to the Federal Rules. *See* Fed.R.Civ.P. 7(a) (distinguishing pleadings such as a complaint, an answer to a complaint, counterclaim or crossclaim, or a reply to an answer, from motions and other papers, including declarations). In any event, the statements plaintiff identifies, including "any references to the allegations of the federal indictment, or issues decided in the state court action," are neither irrelevant nor scandalous. Thus we find plaintiff's motion to strike is without merit.

## V. Refund of Premiums

In addition to declaratory judgment, plaintiff seeks a refund of all premiums paid by him to defendants after February 4, 1999, the date on which he lost his medical license. Plaintiff alleges that he continued paying premiums on his policy until he filed his state court action in March 2001 and that during this two year period, defendants knew he could never again practice medicine. Defendants have offered no explanation as to why, after being informed by their investigator that Corines's license was revoked, they continued to accept plaintiff's premiums during this period, nor has plaintiff articulated any theory under which he is entitled to a refund.[7]

---

**6.** We note that even if plaintiff's earlier action had been solely for declaratory-relief, it would not fall within the exception since the subject matter of the declaratory relief is the same in both actions.

**7.** Although New York law prevents an insurer from retaining premium payments or denying coverage for a policy "which it knew when issued was void from its inception," *Lampke v. Metropolitan Life Ins. Co.*, 279 N.Y. 157, 165, 18 N.E.2d 14 (1938); *see also Bible v. John Hancock Mutual Life Ins. Co.*, 256 N.Y. 458, 462, 176 N.E. 838 (1931), the policy at

issue is not alleged to have been void when issued. Construing plaintiff's submissions liberally, as we must, it appears as though plaintiff's argument is based on the principle of equitable estoppel. Indeed, it is conceivable, in circumstances where an insurer continues accepting premium payments from a plaintiff, that equitable estoppel might preclude the insurer from declaring the plaintiff's policy void. However, defendants have not argued before this Court that plaintiff's policy was void. Instead, they argue for the claim preclusive effect of the prior state court judgment.

We need not attempt to unravel this mystery, since it is evident that plaintiff could have sought a refund of the same premium payments in his prior state court action. He apparently chose not to do so, although his claim for unspecified monetary damages may have ultimately been intended to include an amount equal to two years of premium payments. Instead, plaintiff seeks to split his claim by first arguing for insurance benefits, and after being found ineligible, then arguing for a refund of his premium payments. As we have already discussed, the principles of claim preclusion prevent plaintiff from proceeding in this fashion.

## CONCLUSION

Ordinarily, our finding that the defense of claim preclusion bars plaintiff's claims as a matter of law warrants dismissal pursuant to Fed.R.Civ.P. 12(b)(6). However, when matters outside the pleadings are presented to and not excluded by the Court on a motion to dismiss under Rule 12(b)(6), then Rule 12(d) requires the Court to treat the motion as one for summary judgment. The Court must provide all parties with "a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

Plaintiff attaches to his Memorandum in Opposition an objection to defendants' failure to provide him with the "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings" required by this Court's Local Rule 12.1. However, the fact that plaintiff brings this omission to the Court's attention in his opposition papers clearly demonstrates that he was aware of Local Rule 12.1 and was not prejudiced. Plaintiff took the opportunity to attach numerous documents he considers pertinent to the motion and submitted a lengthy brief. We therefore find it appropriate to treat the motion as one for summary judgment. As there is no genuine dispute that plaintiff could have brought his present claims in his prior state court action, summary judgment is granted and plaintiff's claims are dismissed.

## SO ORDERED.

## MEMORANDUM AND ORDER

Plaintiff has moved for reconsideration, pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, of this Court's February 25, 2011 Memorandum and Order granting summary judgment to defendants and dismissing plaintiff's claims. *See Corines v. American Physical Ins. Trust,* No. 09 Civ. 10348(NRB), 769 F.Supp.2d 584, 2011 WL 724686 (S.D.N.Y. Feb. 25, 2011). For the reasons discussed below, the plaintiff's motion for reconsideration is denied.

## DISCUSSION

A motion for reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," *In re Initial Public Offering Sec. Litig.,* 399 F.Supp.2d 298, 300 (S.D.N.Y.2005) (internal citation and quotation omitted), *aff'd sub nom Tenney v. Credit Suisse First Boston Corp.,* Nos. 05 Civ. 3430, 05 Civ. 4759, & 05 Civ. 4760, 2006 WL 1423785, at *1 (2d Cir.2006), and appropriate only when a court overlooks "controlling decisions or factual matters that were put before it on the underlying motion" and which, if examined, might reasonably have led to a different result. *Eisemann v. Greene,* 204 F.3d 393, 395 n. 2 (2d Cir. 2000). A motion for reconsideration is not, however, a "second bite at the apple" for a party dissatisfied with a court's ruling. *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998). Similarly, it is not appropriate to use a motion for reconsideration as a vehicle to advance new theories a party failed to articulate in arguing the

underlying motion. *See Griffin Ins., Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court. *Id.* (internal citations omitted).

The present motion must be denied because plaintiff fails to point to any "controlling decisions or factual matters" that were previously put before the Court and that, if examined, might reasonably have led to a different result. *Eisemann,* 204 F.3d at 395 n. 2. Instead, plaintiff argues that he was hindered in his prior state court action against defendants by his incarceration, his change of counsel, and the state court's handling of discovery and other aspects of case management.[1] None of this alters our conclusion that plaintiff could have raised the same claims in his state court action which he now seeks to bring before this Court, and thus claim preclusion bars him from doing so.

**SO ORDERED.**

---

1. We note that plaintiff has already had numerous opportunities to argue that these issues constituted reversible error in the state court proceeding. The issues could have been raised: in his motion for reconsideration of the state court's decision, in his appeal to the Appellate Division, in his motion for reconsideration of the Appellate Division's denial, and in his motion for leave to appeal to the Court of Appeals.